IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LEAF FUNDING INC                          )
                                          )
                    Plaintiff,            )
                                          )          FILED STAMP: JULY 16, 2008
        v.                                )   No.    08CV4032
                                          )          JUDGE NORGLE
MIDWEST OPEN MRI, INC.,                    )          MAG. JUDGE COX
KUNDANKUMAR GIRI and                      )          J. N.
NIRANJANA GIRI,                           )
                                          )
                    Defendants.           )

## COMPLAINT

Plaintiff, LEAF Funding, Inc., for its Complaint against Defendants, Midwest Open MRI,

Inc., Kundankumar Giri, and Niranjana Giri, states as follows:

### JURISDICTION AND PARTIES

1.      Plaintiff, LEAF Funding Inc. ("LEAF"), is a Delaware corporation with its principal

place of business in Wilmington, Delaware.

2.      Defendant, Midwest Open MRI, Inc. ("Midwest") is an Illinois corporation with its

principal place of business located at 7372 South Kingery Hwy, Darien, Illinois.

3.      Defendant, Kundankumar Giri, is a citizen of Illinois who resides at 138 St. Francis

Circle, Oak Brook, Illinois.

4.      Defendant, Niranjana Giri (collectively with Kundankumar Giri, the "Giris"), is a

citizen of Illinois who resides at 138 St. Francis Circle, Oak Brook, Illinois.

5.      This dispute involves citizens from different states, and the amount in

controversy, exclusive of interests and costs, exceeds $75,000; accordingly, the court has

jurisdiction pursuant to 28 U.S.C. §1332.  Venue is proper pursuant to 28 U.S.C. §1391(a).

## BACKGROUND FACTS

6.      On or about September 29, 2003, Blockwell Funding Corp. ("Blockwell"), as Lessor, and Midwest, as Lessee, executed a Lease Agreement (the "Original Lease") with respect to certain equipment described within that agreement.  (A copy of the Original Lease is attached as "Exhibit A.")

7.      Under the Original Lease, Midwest agreed to pay Blockwell, and its assigns, monthly payments of $1,200.00, plus tax for the first six months followed by 60 consecutive monthly payments of $17,877.45, plus tax.

8.      Under the Original Lease, upon default, Midwest agreed to pay the sum of all unpaid rents and other accrued payments due under the Original Lease, all accelerated future payments due under the Original Lease, discounted to their present value at a discount rate of 9% and the residual interest in the Equipment, reduced to present value at a discount rate of 9%, plus interest at the rate of 18% per annum, to return the Equipment and to pay reasonable collection costs and attorneys' fees.

9.      To secure payment of the indebtedness under the Original Lease, on or about September 23, 2003, the Giris executed an Equipment Lease Guaranty (the "Guaranty").  (A copy of the Guaranty is attached as "Exhibit B.")  Under the Guaranty, the Giris, jointly and severally, absolutely and unconditionally agreed to repay all monies owed by Midwest to Blockwell or its assigns under the Original Lease and any related agreements.

10.     On or about September 23, 2003, the Equipment was received and fully accepted by Midwest.  (A copy of the Acknowledgement and Acceptance of Equipment by Lessee is attached as "Exhibit C.")

11.     On or about September 25, 2003, LEAF, as Purchaser, and Blockwell, as Seller, executed a Memorandum of Assignment (the "Assignment") under which Blockwell assigned its rights in the Original Lease to LEAF.  (A copy of the Assignment is attached as "Exhibit D.")

12.     On November 20, 2003, LEAF notified Midwest that to accommodate the full funding of the original Lease, the Original Lease was required to be broken into two separate lease agreements.  On November 20, 2003, Midwest agreed to the modified leasing arrangement.  (A copy of the November 20, 2003 letter is attached as "Exhibit E.")

13.     On or about November 25, 2003, Blockwell, as Lessor, and Midwest, as Lessee, executed a Lease Agreement (the "First Modified Lease") with respect to a portion of the Equipment.  (A copy of the First Modified Lease is attached as "Exhibit F.")

14.     Under the First Modified Lease, Midwest agreed to pay Blockwell, and its assigns, monthly payments of $475.20, plus tax for the first six months followed by 60 consecutive monthly payments of $7,079.47, plus tax.

15.     Under the First Modified Lease, upon default, Midwest agreed to pay the sum of all unpaid rents and other accrued payments due under the First Modified Lease, all accelerated future payments due under the First Modified Lease, discounted to their present value at a discount rate of 9%, and the residual interest in the Equipment, reduced to present value at a discount rate of 9%, plus interest at the rate of 18% per annum, to return the Equipment and to pay the reasonable collection costs and attorney's fees.

16.     On or about November 25, 2003, Blockwell, as Lessor, and Midwest, as Lessee, executed a Lease Agreement (the "Second Modified Lease") with respect to a portion of the Equipment.  (A copy of the Second Lease Agreement is attached as "Exhibit G.")

17.    Under the Second Modified Lease, Midwest agreed to pay Blockwell, and its assigns, monthly payments of $724.80, plus tax for the first six months followed by 60 consecutive monthly payments of $10,797.98, plus tax.

18.    Under the Second Modified Lease, upon default, Midwest agreed to pay the sum of all unpaid rents and other accrued payments due under the Second Modified Lease, all accelerated future payments due under the Second Modified Lease, discounted to their present value at a discount rate of 9%, and the residual interest in the Equipment, reduced to present value at a discount rate of 9%, plus interest at the rate of 18% per annum, to return the Equipment and to pay the reasonable collection costs and attorney's fees.

## COUNT I
## BREACH OF FIRST MODIFIED LEASE AGREEMENT

19.    LEAF incorporates the allegations of ¶¶1 through 18, inclusive, as if fully rewritten into this paragraph.

20.    Midwest failed to make payments under the First Modified Lease when due and as required.

21.    Midwest is in default under the First Modified Lease.

22.    As a result, under the First Modified Lease, Midwest presently owes LEAF the sum of $84,953.64, plus interest at the rate of 18% per annum, reasonable collection costs and attorney's fees.

23.    LEAF has performed all terms and conditions required of it to be performed under the First Modified Lease.

WHEREFORE, Plaintiff, LEAF Funding, Inc., prays that this Honorable Court enter judgment in its favor and against Defendant, MIDWEST OPEN MRI, INC., and enter an order requiring Defendant to pay it the sum of $84,953.64, together with interest from the date of default

at the rate of 18% per annum, plus attorney's fees, and costs as well as all other relief deemed just and appropriate in the circumstances.

## COUNT II
## BREACH OF SECOND MODIFIED LEASE

24.     LEAF incorporates the allegations of ¶¶1 through 23, inclusive, as if fully rewritten into this paragraph.

25.     Midwest failed to make payments under the Second Modified Lease when due and as required.

26.     Midwest is in default under the Second Modified Lease.

27.     As a result, under the Second Modified Lease, Midwest presently owes LEAF the sum of $151,171.72, plus interest at the rate of 18% per annum, reasonable collection costs and attorney's fees.

28.     LEAF has performed all terms and conditions required of it to be performed under the Second Modified Lease.

WHEREFORE, Plaintiff, LEAF Funding, Inc., prays that this Honorable Court enter judgment in its favor and against Defendant, MIDWEST OPEN MRI, INC., and enter an order requiring Defendant to pay it the sum of $151,171.72, together with interest from the date of default at the rate of 18% per annum, plus attorney's fees, and costs as well as all other relief deemed just and appropriate in the circumstances.

## COUNT III
## LIABILITY OF GUARANTORS

29.     LEAF incorporates the allegations of ¶¶1 through 28, inclusive, as if fully rewritten into this paragraph.

30.     Pursuant to the Guaranty, the Giris owe LEAF, under the First Modified Lease, the sum of $84,953.64, plus interest at the rate of 18% per annum, reasonable collection costs and attorney's fees.

31.     Pursuant to the Guaranty, the Giris owe LEAF, under the Second Modified Lease, the sum of $151,171.72, plus interest at the rate of 18% per annum, reasonable collection costs and attorney's fees.

WHEREFORE, Plaintiff, LEAF Funding, Inc., prays that this Honorable Court enter judgment in its favor and against Defendants, KUNDANKUMAR GIRI and NIRANJANA GIRI, and enter an order requiring Defendants to pay it the sum of $236,125.36, together with interest from the date of default at the rate of 18% per annum, plus attorney's fees, and costs as well as all other relief deemed just and appropriate in the circumstances.

## COUNT IV
## REPLEVIN

32.     LEAF incorporates the allegations of ¶¶1 through 31, inclusive, as if fully rewritten into this paragraph.

33.     Pursuant to the terms and provisions of the First and Second Modified Leases, upon default by Midwest, LEAF is entitled to immediate possession of the Equipment.

34.     LEAF has demanded return of the Equipment.

35.     Midwest has failed and refused to return the Equipment and is wrongfully retaining possession of the Equipment.

36.    The Equipment has not been taken for tax assessment or fine pursuant to statute or seized under an execution of judgment.

WHEREFORE, Plaintiff, LEAF Funding, Inc., prays that this Honorable Court enter judgment in its favor and against Defendant, MIDWEST OPEN MRI, INC., and enter an order requiring Defendant to return the equipment at issue to it and for all other relief deemed just and appropriate in the circumstances.

**COUNT V**
**CONVERSION**

37.    LEAF incorporates the allegations of ¶¶1 through 36, inclusive, as if fully rewritten into this paragraph.

38.    By refusing to return the Equipment, Midwest has converted it.

39.    LEAF is entitled to recover from Midwest the fair market value of the equipment.

40.    The estimated value of the Equipment is $180,000.00.

WHEREFORE, Plaintiff, LEAF Funding, Inc., prays that this Honorable Court enter judgment in its favor and against Defendant, MIDWEST OPEN MRI, INC., and enter an order requiring Defendant to pay it the sum of $180,000 plus further compensatory and punitive damages, plus interest, together with attorneys' fees and costs and for all other relief deemed just and appropriate in the circumstances.


Michael H. McColl, ARDC 6225588
Foran Glennon Palandech & Ponzi PC
150 South Wacker Drive, Suite 1100
Chicago, IL 60606
(312)863-5000

Attorneys for LEAF Funding, Inc.

08CV4032
JUDGE NORGLE
MAG. JUDGE COX

# BLOCKWELL FUNDING CORP.
50 GERARD STREET, HUNTINGTON, NY 11743
(631) 547-1800   FAX (631) 547-1801

J. N.    LEASE NO.:_____
         LEASE DATE:_____

| FULL LEGAL NAME AND ADDRESS OF LESSEE | SUPPLIER OF EQUIPMENT (COMPLETE ADDRESS) |
|---|---|
| Midwest Open MRI, Inc.<br>8319 West North Avenue<br>Melrose Park, IL 60160 | See Exhibit "A" |

JOINTLY AND SEVERALLY RESPONSIBLE

**EQUIPMENT LEASED**

| QUANTITY | DESCRIPTION, MODEL NO., SERIAL NO. OR OTHER IDENTIFICATION AND MANUFACTURER |
|---|---|
| | See Exhibit "A" |

Term of Lease: _____66_____ months
Rental Payments: $1,200.00 + Tax_____ per month for the first ___6___ months,
    followed by $17,877.45 + Tax_____ per month for the next __60__ months,
    followed by $_____ per month for the next _____ months,
Advance Rentals: $19,077.45 + Tax_____ payable at the time of signing of
this lease to be applied to the __Last 1 + First__ rental payments.

EQUIPMENT LOCATION IF DIFFERENT:

## TERMS AND CONDITIONS OF LEASE

1. **LEASE.** Lessee hereby leases from Lessor, and Lessor leases to Lessee, the personal property described above, together with any replacement parts, additions, repairs or accessories now or hereafter incorporated in or affixed to it (hereinafter referred to as the "Equipment").

2. **ACCEPTANCE -OF EQUIPMENT.** Lessee agrees to inspect the Equipment and to execute an Acknowledgment and Acceptance of Equipment by Lessee notice, as provided by Lessor, after the Equipment has been delivered and after Lessee is satisfied that the Equipment is satisfactory in every respect. Lessee hereby authorizes Lessor to insert in this Lease serial numbers or other identifying data with respect to the Equipment.

3. **DISCLAIMER OF WARRANTIES AND CLAIMS; LIMITATION OF REMEDIES. THERE ARE NO WARRANTIES BY OR ON BEHALF OF LESSOR.** Lessee acknowledges and agrees by his signature below as follows:
   (a) LESSOR MAKES NO WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE , ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY CHARACTERISTICS OF THE EQUIPMENT;
   (b) Lessee has fully inspected the Equipment which it has requested Lessor to acquire and lease to Lessee, and the Equipment is in good condition and to Lessee's complete satisfaction;
   (c) Lessee leases the Equipment "as is" and with all faults;
   (d) Lessee specifically acknowledges that the Equipment is leased to Lessee solely for commercial or business purposes and not for personal, family, household, or agricultural purposes;
   (e) If the Equipment is not properly installed, does not operate as represented or warranted by the supplier or manufacturer, or is unsatisfactory for any reason, regardless of cause or consequence, Lessee's only remedy, if any, shall be against the supplier or manufacturer of the Equipment and not against Lessor;
   (f) Provided Lessee is not in default under this Lease, Lessor assigns to Lessee any warranties made by the supplier or the manufacturer of the Equipment;
   (g) LESSEE SHALL HAVE NO REMEDY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES AGAINST LESSOR; and
   (h) NO DEFECT, DAMAGE, OR UNFITNESS OF THE EQUIPMENT FOR ANY PURPOSE SHALL RELIEVE LESSEE OF THE OBLIGATION TO PAY RENT OR RELIEVE LESSEE OF ANY OTHER OBLIGATION UNDER THIS LEASE.
   
   The parties have specifically negotiated and agreed to the foregoing paragraph.    Initials

4. **STATUTORY FINANCE LEASE.** Lessee agrees and acknowledges that it is the intent of both parties to this Lease that it qualify as a statutory finance lease under Article 2A of the Uniform Commercial Code. Lessee acknowledges and agrees that Lessee has selected both: (1) the Equipment; and (2) the supplier from whom Lessor is to purchase the Equipment. Lessee acknowledges that Lessor has not participated in any way in Lessee's selection of the Equipment or of the supplier, and Lessor has not selected, manufactured, or supplied the Equipment.

5. **ASSIGNMENT BY LESSEE PROHIBITED.** WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, LESSEE SHALL NOT ASSIGN THIS LEASE OR SUBLEASE THE EQUIPMENT OR ANY INTEREST THEREIN, OR PLEDGE OR TRANSFER THIS LEASE, OR OTHERWISE DISPOSE OF THE EQUIPMENT COVERED HEREBY.

6. **COMMENCEMENT; RENTAL PAYMENTS; INTERIM RENTALS.** This Lease shall commence upon the written acceptance hereof by Lessor and shall end upon full performance and observance by Lessee of each and every term, condition, and covenant set forth in this lease and extensions hereto and any extensions hereof. Rental Payments shall be in the amounts and frequency as set forth on the face of this Lease or any Schedules hereto. In addition to regular rentals, Lessee shall pay to Lessor interim rent for the use of the Equipment prior to the due date of the first payment. Interim rent shall be in an amount equal to 1/30th of the monthly rental, multiplied by the number of days elapsing between the date on which the Equipment is accepted by Lessee and the commencement date of this Lease, together with the number of days elapsing between commencement of the Lease and the due date of the first payment. The payment of interim rent shall be due and payable upon Lessee's receipt of Invoice from Lessor. The rental period under the Lease shall terminate following the last day of the terms stated on the face hereof or in any Schedule hereto unless such Lease or Schedule has been extended or otherwise modified. Lessor shall have no obligation to Lessee under this Lease if the Equipment, for whatever reason, is not delivered to Lessee within ninety (90) days after Lessee signs this Lease. Lessor shall have no obligation to Lessee under this Lease if Lessee fails to execute and deliver to Lessor an Acknowledgment and Acceptance of Equipment by Lessee acknowledging its acceptance of the Equipment within thirty (30) days after it is delivered to Lessee, with respect to this Lease or any Schedule hereto.

7. **CHOICE OF LAW.** This Lease shall not be effective until signed by Lessor at its principal office listed above. This Lease shall be considered to have been made in the state of Lessor's principal place of business listed above and shall be interpreted in accordance with the laws and regulations of the state of Lessor's principal place of business.
   
   Lessee agrees to jurisdiction in the state of Lessor's principal place of business listed above in any action, suit or proceeding regarding this Lease, and each of them, transacted business in the state of Lessor's principal place of business listed above by entering into this Lease. In the event of any legal action with regard to this lease or the equipment covered hereby, Lessee agrees that venue shall be laid in the County of Lessor's principal place of business.

THIS LEASE IS NOT CANCELABLE OR TERMINABLE BY LESSEE.  SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS WHICH ARE A PART OF THIS LEASE.

IF THE LESSEE ELECTS NOT TO PROCEED FOR ANY REASON, THEN ANY MONIES COLLECTED WILL BE RETURNED AT THE SOLE OPTION OF BLOCKWELL FUNDING CORP.

LESSEE UNDERSTANDS AND ACKNOWLEDGES THAT NO BROKER OR SUPPLIER, NOR ANY SALESMAN, BROKER, OR AGENT OF ANY BROKER OR SUPPLIER, IS AN AGENT OF LESSOR. NO BROKER OR SUPPLIER, NOR ANY SALESMAN, BROKER, OR AGENT OF ANY BROKER OR SUPPLIER, IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE, AND NOR REPRESENTATION AS TO THE EQUIPMENT OR ANY OTHER MATTER BY THE BROKER OR SUPPLIER, NOR ANY SALESMAN, BROKER, OR AGENT OF ANY BROKER OR SUPPLIER, SHALL IN ANY WAY AFFECT LESSEE'S DUTY TO PAY THE RENTALS AND TO PERFORM LESSEE'S OBLIGATIONS SET FORTH IN THIS LEASE.

LESSEE: Midwest Open MRI, Inc.                LESSOR: BLOCKWELL FUNDING CORP.

X_____  DATE __9/23/03__      _____  DATE __9/29/03__
Niranjana Giri, Pres.                         Accepted only if executed by an officer of Lessor and Lessor accepts this Lease only if
                                              governed under the Laws of the State of New York to which Lessee has heretofore agreed.

_____  DATE _____

**EXHIBIT**
A

8. LIMITED PREARRANGED AMENDMENTS; AUTHORIZATION; SPECIFIC POWER OF ATTORNEY. In the event it is necessary to amend the terms of this Lease to reflect a change in one or more of the following conditions: (a) Lessor's actual cost of procuring the Equipment, or (b) Lessor's actual cost of providing the Equipment to Lessee, or (c) A change in rental payments as a result of (1) or (2), above, or (d) Description of the Equipment; Lessee agrees that any such amendment shall be described in a letter from Lessor to Lessee, and unless within 15 days after the date of such letter Lessee objects in writing to Lessor, this Lease shall be deemed amended and such amendments shall be incorporated in this Lease herein as if originally set forth.

Lessee authorizes Lessor or its designee to file a Uniform Commercial Code financing statement without Lessee's signature, in form and content and from time to time as Lessor deems proper, listing Lessee as Lessee or Debtor. Lessee further grants to Lessor a specific power of attorney for Lessor to sign, endorse or negotiate for Lessor's benefit any instrument representing proceeds from any policy of insurance covering the Equipment.

9. LESSEE'S REPRESENTATION. Lessee represents that its exact legal name, state of incorporation, location of its chief executive office and/or its place of residence as applicable, have been correctly identified to Lessor.

10. USE; EQUIPMENT LOCATION. Lessee shall use the Equipment in a careful manner, make all necessary repairs at Lessee's expense, shall comply with all laws relating to its possession, use, or maintenance, and shall not make any alteration, additions, or improvements to the Equipment without Lessor's prior written consent. All additions, repairs or improvements made to the Equipment shall belong to Lessor. The equipment shall be kept at the location specified above, or, if none is specified, at Lessee's address as set forth above and shall not be removed without Lessor's written consent.

11. OWNERSHIP; PERSONALTY. The Equipment is, and shall remain, the property of Lessor, and Lessee shall have no right, title, or interest in the Equipment except as expressly set forth in this Lease. The Equipment shall remain personal property even though installed in or attached to real property.

12. SURRENDER. By this Lease, Lessee acquires no ownership right in the Equipment, and has no option to purchase same. Upon the expiration, or earlier termination or cancellation of this Lease, or in the event of a default under Paragraph 20, hereof, Lessee, at its expense, shall return the Equipment in good repair, ordinary wear and tear resulting from proper use thereof alone excepted, by delivering it, packed and ready for shipment, to such place or carrier as Lessor may specify.

13. RENEWAL. At the expiration of the Lease, Lessee shall return the Equipment in accordance with Paragraph 12, hereof. At Lessor's option, this Lease may be continued on a month-to-month basis until 30 days after Lessee returns the Equipment to Lessor. In the event Lease is so continued, Lessee shall pay to Lessor rentals in the same periodic amounts indicated under "Amount of Each Payment" above.

14. LOSS AND DAMAGE. Lessee shall at all times after signing this Lease bear the entire risk of loss, theft, damage or destruction of the Equipment from any cause whatsoever, and no loss, theft, damage or destruction of the Equipment shall relieve Lessee of the obligation to pay rent or to comply with any other obligation under this Lease. In the event of damage to any part of the Equipment, Lessee shall immediately place the same in good repair at Lessee's expense. If Lessor determines that any part of the Equipment is lost, stolen, destroyed or damaged beyond repair, Lessee shall at Lessee's option do one of the following: (a) Replace the same with like equipment in good repair, acceptable to Lessor; or (b) Pay Lessor in cash the following: (i) all amounts due by Lessee to Lessor under this Lease up to the date of the loss, (ii) the accelerated balance of the total amounts due for the remaining term of this Lease attributable to said item, discounted to present value at a discount rate of 9% as of the date of loss; and (iii) the Lessor's estimate as of the time this Lease was entered into of Lessor's residual interest in the Equipment discounted to present value at a discount rate of 9%, as of the date of loss. Upon Lessor's receipt of payment as set forth above, Lessee shall be entitled to title to the Equipment without any warranties. If insurance proceeds are used to fully comply with this subparagraph, the balance of any such proceed shall go to Lessee to compensate for loss of use of the Equipment for the remaining term of the Lease.

15. INSURANCE; LIENS; TAXES. Lessee shall provide and maintain insurance against loss, theft, damage, or destruction of the Equipment in an amount not less than the full replacement value of the Equipment, with loss payable to Lessor. Lessee also shall provide and maintain comprehensive general all-risk liability insurance including but not limited to product liability coverage, insuring Lessor and Lessee, with a severability of interest endorsement, or its equivalent, against any and all loss or liability for all damages, either to persons or property or otherwise, which might result from or happen in connection with the condition, use, or operation of the Equipment, with such limits and with an insurer satisfactory to Lessor. Each policy shall expressly provide that said insurance as to Lessor and its assigns shall not be invalidated by any act, omission, or neglect of Lessee and cannot be canceled without 30 days' prior written notice to Lessor. As to each policy Lessee shall furnish to Lessor a certificate of insurance from the insurer, which certificate shall evidence the insurance coverage required by this paragraph. Lessor shall have no obligation to ascertain the existence of or provide any insurance coverage for the Equipment or for Lessee's benefit. If Lessee fails to provide such insurance, Lessor will have the right, but no obligation, to have such insurance protecting Lessor placed at Lessee's expense. Such placement will result in an increase in Lessee's periodic payments, such increase being attributed to Lessor's costs of obtaining such insurance and any customary charges or fees of Lessor's or its designee associated with such insurance.

Lessee shall keep the Equipment free and clear of all levies, liens, and encumbrances. Lessee shall pay all charges and taxes (local, state, and federal) which may now or hereafter be imposed upon the ownership, leasing, rental, sale purchase, possession, or use of the Equipment, excluding, however, all taxes on or measured by Lessor's net income. If Lessee fails to pay said charges or taxes, Lessor shall have the right, but shall not be obligated, to pay such charges or taxes. In that event, Lessor shall notify Lessee of such payment and Lessee shall repay to Lessor the cost thereof within 15 days after such notice is mailed to Lessee.

16. INDEMNITY. Lessee shall indemnify Lessor against any claims, actions, damages, or liabilities, including all attorney fees, arising out of or connected with Equipment, without limitation. Such indemnification shall survive the expiration, cancellation, or termination of this Lease. Lessee waives any immunity Lessee may have under any industrial insurance act, with regard to indemnification of Lessor.

17. ASSIGNMENT BY LESSOR. Any assignee of Lessor shall have all of the rights but none of the obligations of Lessor under this Lease. Lessee shall recognize and hereby consents to any assignment of this Lease by Lessor, and shall not assert against the assignee any defense, counterclaim, or setoff that Lessee may have against Lessor. Subject to the foregoing, this Lease inures to the benefit of and is binding upon the heirs, devisees, personal representatives, survivors, successors in interest, and assigns of the parties hereto.

18. SERVICE CHARGES; INTEREST. If Lessee shall fail to make any payment required by this Lease within 10 days of the date thereof, Lessee shall pay to Lessor a service charge of 10% of the amount due; provided, however, that not more than one such service charge shall be made on any delinquent payment, regardless of the length of the delinquency. In addition to the foregoing service charge, Lessee shall pay to Lessor a $100 default fee with respect to any payment which becomes thirty (30) days past due. In addition, Lessee shall pay to Lessor any actual additional expenses incurred by Lessor in collection efforts, including but not limited to long-distance telephone charges and travel expenses. Lessee shall pay to Lessor interest on any delinquent payment or amount due under this Lease from the due date thereof until paid, at the lesser of the maximum rate of interest allowed by law or 18% annum.

19. TIME OF ESSENCE. Time is of the essence of this Lease, and this provision shall not be impliedly waived by the acceptance on occasion of late or defective performance.

20. DEFAULT. Lessee shall be in default if: (a) Lessee shall fail to make any payment due under the terms of this Lease for a period of 10 days from the due date thereof; or (b) Lessee shall fail to observe, keep, or perform any provision of this Lease, and such failure shall continue for a period of 10 days; or (c) Lessee has made any misleading or false statement in connection with application for or performance of this Lease; or (d) The Equipment or any part thereof shall be subject to any lien, levy, seizure, assignment, transfer, bulk transfer, encumbrance, application, attachment, execution, sublease, or sale without prior written consent of Lessor, or if Lessee shall abandon the Equipment or permit any other entity or person to use the Equipment without the prior written consent of Lessor; or (e) Lessee dies or ceases to exist; or (f) Lessee defaults on any other agreement it has with Lessor; or (g) Any guarantor of this Lease defaults on any obligation to Lessor or any of the above listed events of default occur with respect to any guarantor or any such guarantor files or has filed against it a petition under the bankruptcy laws.

21. REMEDIES. If Lessee is in default, Lessor, with or without notice to Lessee, shall have the right to exercise any one or more of the following remedies, concurrently or separately, and without any election of remedies being deemed to have been made: (a) Lessor may enter upon Lessee's premises and without any surt order or other process of law may repossess and remove the Equipment, or render the Equipment unusable without removal, either with or without notice to Lessee. Lessee hereby waives any trespass or right of action for damages by reason of such entry, removal, or disabling. Any such repossession shall not constitute a termination of this Lease unless Lessor so notifies Lessee in writing; (b) Lessor may require Lessee, at its expense, to return the Equipment in good repair, ordinary wear and tear resulting from proper use thereof alone excepted, by delivering it, packed and ready for shipment, to such place or carrier as Lessor may specify; (c) Lessor may cancel or terminate this Lease and may retain any and all prior payments paid by Lessee; (d) Lessor may declare all sums due and to become due under this Lease immediately due and payable, including as to any or all items of Equipment, without notice or demand to Lessee; (e) Lessor may re-lease the Equipment, without notice to Lessee, to any third party, upon such terms and conditions as Lessor alone shall determine, or may sell the Equipment, without notice to Lessee, at private or public sale, at which sale Lessor may be the purchaser; (f) Lessor may sue for and recover from Lessee the sum of all unpaid rents and other payments due under this Lease then accrued, all accelerated future payments due under this Lease, discounted to their present value at a discount rate of 9% as of the date of default, Lessor's estimate at the time this Lease was entered into of Lessor's residual interest in the Equipment, reduced to present value at a discount rate of 9% as of the date of default, less the net proceeds of disposition, if any, of the Equipment; (g) To pursue any other remedy available at law, by statute or in equity. No right or remedy herein conferred upon or reserved to Lessor is exclusive of any other right or remedy herein, or by law or by equity provided or permitted, but each shall be cumulative of every other right or remedy given herein or now or hereafter existing by law or equity or by statute or otherwise, and may be enforced concurrently therewith or from time to time. No single or partial exercise by Lessor of any right or remedy hereunder shall preclude any other or further exercise of any other right or remedy.

22. MULTIPLE LESSEES. Lessor may, with the consent of any one of the Lessees hereunder, modify, extend, or change any of the terms hereof without consent or knowledge of the others, without in any way releasing, waiving, or impairing any right granted to Lessor against the others. Lessees and each of them are jointly and severally responsible and liable to Lessor under this Lease.

23. EXPENSE OF ENFORCEMENT. In the event of any legal action with respect to this Lease, the prevailing party in any such action shall be entitled to reasonable attorney fees, including attorney fees incurred at the trial level, including action in bankruptcy court, on appeal or review, or incurred without action, suits, or proceedings, together with all costs incurred in pursuit thereof. LESSEE EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY LITIGATION COMMENCED WITH RESPECT TO THIS LEASE.

24. ENTIRE AGREEMENT; NO ORAL MODIFICATIONS; NO WAIVER. This instrument constitutes the entire agreement between Lessor and Lessee. No provision of this Lease shall be modified or rescinded unless in writing signed by a representative of Lessor. Waiver by Lessor of any provision hereof in one instance shall not constitute a waiver as to any other instance.

25. SEVERABILITY. This Lease is intended to constitute a valid and enforceable legal instrument, and no provision of this Lease that may be deemed unenforceable shall in any way invalidate any other provision or provisions hereof, all of which shall remain in full force and effect.

26. FACSIMILIE. If a signed copy of this Lease or any associated document is delivered to Lessor by facsimile transmission it shall be binding on Lessee and Lessee agrees, notwithstanding any rule of evidence to the contrary, that such facsimile signature of Lessee shall be deemed an original signature.

# EQUIPMENT LEASE GUARANTY

08CV4032
JUDGE NORGLE
MAG. JUDGE COX
J. N.

LESSOR:    BLOCKWELL FUNDING CORP.
50 GERARD STREET
HUNTINGTON, NY 11743

LEASE NO.: _____

DATE OF LEASE: _____9/29/03_____

This Guaranty Agreement made and entered into this ___23___ day of ____September_____, 2003 by __Kundankumar Giri and Niranjana Giri (hereinafter referred to collectively as "Guarantor"), in favor of _BLOCKWELL FUNDING CORP._ (hereinafter referred to as "Lessor").

WHEREAS, it is contemplated that Lessor may enter into a lease and/or other related agreements (hereinafter collectively "Lease") with _Midwest Open MRI, Inc._ (hereinafter collectively "Lessee"); and,

WHEREAS, Guarantor has an interest, financial or otherwise, in Lessee, and it is to the benefit of Guarantor that Lessor enter into the Lease with Lessee, and Guarantor has read the proposed Lease in full and finds the terms of said Lease acceptable, and in recognition that Lessor would be unwilling to enter into the Lease without the Guaranty hereinafter set forth, and in recognition of Lessor's reliance upon the Guarantor in entering into the Lease;

NOW, THEREFORE, in order to induce Lessor to enter into the Lease, Guarantor, jointly and severally, unconditionally guaranties the faithful and full performance by Lessee of all terms and conditions of the Lease. In the event of default by Lessee, or failure to faithfully perform any of the terms or conditions required of Lessee under the Lease, or in the event of failure of Lessee to make any or all payments of money required of it under the Lease, Guarantor unconditionally promises to pay to Lessor, in lawful money of the United States, all sums at any time due and unpaid under the Lease, plus costs of collection, including reasonable attorney fees with or without trial, and upon appeal and review.

The obligations of Guarantor hereunder are joint and several and independent of the obligations of Lessee under the Lease, and a separate action or actions may be brought against Guarantor, whether action is brought against Lessee or whether Lessee be joined in any action or actions, the liability of Guarantor hereunder being primary. Guarantor hereby waives the benefit of any suretyship defenses affecting its liability hereunder or the enforcement hereof.

Guarantor authorizes Lessor, without notice or demand, and without affecting Guarantor's liability hereunder, from time to time to renew, extend, accelerate, or otherwise change the payment terms or other terms of the Lease or any part thereof. Lessor may, without notice, assign this Guaranty in whole or in part. Guarantor authorizes Lessor, its successors, assigns and potential assigns, to obtain a personal credit profile from a national credit agency for purposes of update, renewal or extension of this Guaranty and for reviewing or collecting upon this Guaranty.

Guarantor hereby waives any right to require Lessor to: (a) proceed against Lessee; (b) proceed against or exhaust any security held by Lessor; or (c) pursue any other remedy in Lessor's power. Guarantor waives any defense arising by reason of any defense of Lessee, or by reason of the cessation, from any cause whatsoever, of the liability of Lessee under the Lease. Guarantor waives any and all demands for performance, notices of nonperformance or default, and notices of cancellation or forfeiture. Lessor may apply all proceeds received from Lessee or others to such part of Lessee's indebtedness as Lessor may deem appropriate without consulting Guarantor and without prejudice to or in any way limiting or lessening the liability of Guarantor under this Guaranty.

If Lessee is a corporation, the undersigned warrant and represent that they are stockholders, directors or officers and/or are financially or otherwise interested in Lessee, and, if married, their marital communities are so interested.

This Guaranty shall not be affected or discharged by the death of the undersigned, but shall bind Guarantor's heirs and personal representatives, and shall inure to the benefit of any successors or assigns of Lessor.

This instrument constitutes the entire agreement between Lessor and Guarantor. No oral or written representation not contained herein shall in any way affect this Guaranty, which shall not be modified except by the parties in writing. Waiver by Lessor of any provision hereof in one instance shall not constitute a waiver as to any other instance.

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ IT. BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

IN WITNESS WHEREOF, the undersigned Guarantor(s) has/have executed this Guaranty this ___23___ day of ____September____, 2003 .

GUARANTOR:

NAME  Kundankumar Giri          PHONE NUMBER  708-450-9800

HOME ADDRESS  138 St Francis circle

CITY  OAKBROOK, IL          STATE          ZIP  60523

WITNESS  Karen Hoseck

GUARANTOR:

NAME  Niranjana Giri          PHONE NUMBER  630-455-5552

HOME ADDRESS  138 St Francis Circle

CITY  OAKBROOK, IL          STATE          ZIP  60523

WITNESS  Karen Hoseck

EXHIBIT
B

eDG105.doc (105)       Rev. 11/00

08CV4032

JUDGE NORGLE

MAG. JUDGE COX

J. N.

LESSOR:    BLOCKWELL FUNDING CORP.
           50 GERARD STREET
           HUNTINGTON, NY 11743

LEASE NUMBER _____

LESSEE:    Midwest Open MRI, Inc.
           8319 West North Avenue
           Melrose Park, IL 60160

DATE OF LEASE ___9/29/03___

## ACKNOWLEDGEMENT AND ACCEPTANCE
## OF EQUIPMENT BY LESSEE

See Exhibit "A"

Lessee hereby acknowledges that the Equipment described above has been received in good condition and repair, has been properly installed, tested, and inspected, and is operating satisfactorily in all respects for all of Lessee's intended uses and purposes. Lessee hereby accepts unconditionally and irrevocably the Equipment.

By signature below, Lessee specifically authorizes and requests Lessor to make payment to the supplier of the Equipment. Lessee agrees that said Equipment has not been delivered, installed, or accepted on a trial basis.

Lessee acknowledges that Lessor is not an agent of the manufacturer or vendor of the equipment. Lessor has not selected, manufactured or supplied and will not select, manufacture or supply any of the equipment. Lessor will only acquire equipment or the right to possession and use of equipment in connection with any lease described herein at the specific request of Lessee. Lessee has selected or will select all equipment and also the manufacturers and vendors of all equipment. Lessee directed the Lessor to acquire the goods or the right to possession and use of the goods, or Lessee has been informed in writing of the identity of vendor. Lessee further acknowledges that it is satisfied that the equipment is suitable and fit for Lessee's purposes. Lessor makes no warranty either express or implied, as to, without limitation, the equipment's quality, condition, merchantability, design, capacity, workmanship, performance or fitness for any particular purpose. No defect or unsuitability of the Equipment or delay in delivery shall relieve Lessee of the obligation to pay Rent or any other obligation under this Lease.

WITH THE DELIVERY OF THIS DOCUMENT TO LESSOR, LESSEE ACKNOWLEDGES AND AGREES THAT LESSEE'S OBLIGATIONS TO LESSOR BECOME ABSOLUTE AND IRREVOCABLE AND LESSEE SHALL BE FOREVER ESTOPPED FROM DENYING THE TRUTHFULNESS OF THE REPRESENTATIONS MADE IN THIS DOCUMENT.

DATE OF ACCEPTANCE:                    LESSEE:  Midwest Open MRI, Inc.

___9/28/03___

X _____
   Niranjana Giri, Pres.

IMPORTANT:  THIS DOCUMENT HAS LEGAL AND FINANCIAL CONSEQUENCES TO YOU. DO NOT SIGN THIS DOCUMENT UNTIL YOU HAVE ACTUALLY RECEIVED ALL OF THE EQUIPMENT AND ARE COMPLETELY SATISFIED WITH IT.

I HEREBY AUTHORIZE _____
                                          TITLE
TO ORALLY VERIFY MY/OUR ACCEPTANCE OF THE ABOVE REFERENCED EQUIPMENT IN MY ABSENCE.

**EXHIBIT**

C

08CV4032
JUDGE NORGLE
MAG. JUDGE COX
J. N.

## MEMORANDUM OF ASSIGNMENT

This Memorandum of Assignment dated September 25, 2003 ("Assignment"), is executed by and between LEAF Financial Corporation, a Delaware corporation with offices located at 1845 Walnut St., Philadelphia, PA 19103 ("LEAF") and [Lease Originator], a Blockwell Funding Corp. corporation with offices located at 50 Gerard St., Huntington, NY 11743 ("Seller"). Seller, for and in consideration of the Purchase Price indicated below paid or to be paid by LEAF to Seller this day, Seller hereby transfers and assigns to LEAF, all Seller's right, title and interest in and to the following Lease, Lease Payments and Equipment, all pursuant to the terms of the Master Purchase Agreement dated as of July 10, 2003 ("Agreement"), the terms of which are incorporated hereby by reference:

Obligor Name and Address: Midwest Open MRI, Inc.
        8319 West North Ave., Melrose Park, IL 60160
Facsimile No.708-450-9975

Equipment Location: 8319 West North Ave., Melrose Park, IL 60160

Lease: Lease Agreement No.          dated  by and between Seller as lessor and lessee.

Equipment Description: See Exhibit "A"

Lease Payments: 64 remaining installments of rent each in the amount of $1,200.00 (5 months) then $17,877.45 (59 months) plus applicable taxes

Due Date for first Lease Payment assigned to LEAF:

Purchase Price: $870,855.34

Security Deposit: $0

Seller hereby specifically restates as of this day and with respect to the Lease and Equipment referenced to herein all of its representations and warranties, covenants and agreements set forth in the Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment by their duly authorized officers as of the date first above written.

LEAF FUNDING, INC.

By: _David H Curlin_
Name: _David H English_
Title: _President_

BLOCKWELL FUNDING CORP.

By: _[signature]_ _VP._
Name: _ROBERT B. KOSHAN, VP._
Title: _VP_

*Upon payment of all of Lessee's obligations pursuant to any such lease assigned, LEAF Financial Corporation will promptly reassign to Blockwell Funding Corp. all rights of LEAF Financial Corporation under the lease, including but not limited to the transfer of title to the subject leased equipment and any unexercised purchase options and/or agreements relating to the leased equipment.*

Page 1 of 1

3-18-03

**EXHIBIT**
D

NOV 24 03 04:27P                                                    P.6

# BLOCKWELL FUNDING CORP.
50 GERARD STREET, HUNTINGTON, NY 11743
(631) 547-1800   FAX (631) 547-1801

MAG. JUDGE COX
J. N.

LEASE NO.: _____
LEASE DATE: _____

| FULL LEGAL NAME AND ADDRESS OF LESSEE | SUPPLIER OF EQUIPMENT (COMPLETE ADDRESS) |
|---|---|
| Midwest Open MRI, Inc.<br>8319 West North Avenue<br>Melrose Park, IL 60160 | See Exhibit "A" |
| JOINTLY AND SEVERALLY RESPONSIBLE | |

| QUANTITY | EQUIPMENT LEASED<br>DESCRIPTION, MODEL NO., SERIAL NO. OR OTHER IDENTIFICATION AND MANUFACTURER |
|---|---|
| | SEE EXHIBIT "A" |

Term of Lease: _____66_____ months
Rental Payments: $475.20 + Tax _____ per month for the first __6__ months,
followed by $7,079.47 + Tax _____ per month for the next __60__ months,
followed by $ _____ per month for the next _____ months,
Advance Rentals: $7,554.67 + Tax _____ payable at the time of signing of
this lease to be applied to the __Last 1 + First__ .
EQUIPMENT LOCATION IF DIFFERENT:

## TERMS AND CONDITIONS OF LEASE

1. **LEASE.** Lessee hereby leases from Lessor, and Lessor leases to Lessee, the personal property described above, together with any replacement parts, additions, repairs or accessories now or hereafter incorporated in or affixed to it (hereinafter referred to as the "Equipment").

2. **ACCEPTANCE OF EQUIPMENT.** Lessee agrees to inspect the Equipment and to execute an Acknowledgment and Acceptance of Equipment by Lessee notice, as provided by Lessor, after the Equipment has been delivered and after Lessee is satisfied that the Equipment is satisfactory in every respect. Lessee hereby authorizes Lessor to insert in this Lease serial numbers or other identifying data with respect to the Equipment.

3. **DISCLAIMER OF WARRANTIES AND CLAIMS; LIMITATION OF REMEDIES. THERE ARE NO WARRANTIES BY OR ON BEHALF OF LESSOR.** Lessee acknowledges and agrees by his signature below as follows:
(a) LESSOR MAKES NO WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY CHARACTERISTICS OF THE EQUIPMENT;
(b) Lessee had fully inspected the Equipment which it has requested Lessor to acquire and lease to Lessee, and the Equipment is in good condition and to Lessee's complete satisfaction;
(c) Lessee leases the Equipment "as is" and with all faults;
(d) Lessee specifically acknowledges that the Equipment is leased to Lessee solely for commercial or business purposes and not for personal, family, household, or agricultural purposes;
(e) If the Equipment is not properly installed, does not operate as represented or warranted by the supplier or manufacturer, or is unsatisfactory for any reason, regardless of cause or consequence, Lessee's only remedy, if any, shall be against the supplier or manufacturer of the Equipment and not against Lessor;
(f) Provided Lessee is not in default under this Lease, Lessor assigns to Lessee any warranties made by the supplier or the manufacturer of the Equipment;
(g) LESSEE SHALL HAVE NO REMEDY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES AGAINST LESSOR; and
(h) NO DEFECT, DAMAGE, OR UNFITNESS OF THE EQUIPMENT FOR ANY PURPOSE SHALL RELIEVE LESSEE OF THE OBLIGATION TO PAY RENT OR RELIEVE LESSEE OF ANY OTHER OBLIGATION UNDER THIS LEASE.

The parties have specifically negotiated and agreed to the foregoing paragraph.                Initials

4. **STATUTORY FINANCE LEASE.** Lessee agrees and acknowledges that it is the intent of both parties to this Lease that it qualify as a statutory finance lease under Article 2A of the Uniform Commercial Code. Lessee acknowledges and agrees that Lessee has selected both: (1) the Equipment; and (2) the supplier from whom Lessor is to purchase the Equipment. Lessee acknowledges that Lessor has not participated in any way in Lessee's selection of the Equipment or of the supplier, and Lessor has not selected, manufactured, or supplied the Equipment.

5. **ASSIGNMENT BY LESSEE PROHIBITED. WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, LESSEE SHALL NOT ASSIGN THIS LEASE OR SUBLEASE THE EQUIPMENT OR ANY INTEREST THEREIN, OR PLEDGE OR TRANSFER THIS LEASE, OR OTHERWISE DISPOSE OF THE EQUIPMENT COVERED HEREBY.**

6. **COMMENCEMENT; RENTAL PAYMENTS; INTERIM RENTALS.** This Lease shall commence upon the written acceptance hereof by Lessor and shall end upon full performance and observance by Lessee of each and every term, condition, and covenant set forth in this lease and Schedules hereto and any extensions hereof. Rental Payments shall be in the amounts and frequency as set forth on the face of this Lease or any Schedules hereto. In addition to regular rentals, Lessee shall pay to Lessor interim rent for the use of the Equipment prior to the due date of the first payment. Interim rent shall be in an amount equal to 1/30th of the monthly rental, multiplied by the number of days elapsing between the date on which the Equipment is accepted by Lessee and the commencement date of the Lease, together with the number of days elapsing between the commencement of the Lease and the due date of the first payment. The payment of interim rent shall be due and payable upon Lessee's receipt of invoice from Lessor. The rental period under this Lease shall terminate following the last day of the terms stated on the face hereof or in any Schedule hereto unless such Lease or Schedule has been extended or otherwise modified. Lessee shall have no obligation to Lessee under this Lease if Lessee fails to execute and deliver to Lessor an Acknowledgment and Acceptance of Equipment by Lessee acknowledging its acceptance of the Equipment within thirty (30) days after it is delivered to Lessee, with respect to this Lease or any Schedule hereto.

7. **CHOICE OF LAW.** This Lease shall not be effective until signed by Lessor at its principal office listed above. This Lease shall be considered to have been made in the state of Lessor's principal place of business listed above and shall be interpreted in accordance with the laws and regulations of the state of Lessor's principal place of business.
Lessee agrees to jurisdiction in the state of Lessor's principal place of business listed above in any action, suit or proceeding regarding this Lease, and each of them, transacted business in the state of Lessor's principal place of business listed above by entering into this Lease. In the event of any legal action with regard to this lease or the equipment covered hereby, Lessee agrees that venue may be laid in the County of Lessor's principal place of business.

THIS LEASE IS NOT CANCELABLE OR TERMINABLE BY LESSEE.  SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS WHICH ARE A PART OF THIS LEASE.
IF THE LESSEE ELECTS NOT TO PROCEED FOR ANY REASON, THEN ANY MONIES COLLECTED WILL BE RETURNED AT THE SOLE OPTION OF BLOCKWELL FUNDING CORP.
LESSEE UNDERSTANDS AND ACKNOWLEDGES THAT NO BROKER OR SUPPLIER, NOR ANY SALESMAN, BROKER, OR AGENT OF ANY BROKER OR SUPPLIER, IS AN AGENT OF LESSOR. NO BROKER OR SUPPLIER, NOR ANY SALESMAN, BROKER, OR AGENT OF ANY BROKER OR SUPPLIER, IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE, AND NOR REPRESENTATION AS TO THE EQUIPMENT OR ANY OTHER MATTER BY THE BROKER OR SUPPLIER, NOR ANY SALESMAN, BROKER, OR AGENT OF ANY BROKER OR SUPPLIER, SHALL IN ANY WAY AFFECT LESSEE'S DUTY TO PAY THE RENTALS AND TO PERFORM LESSEE'S OBLIGATIONS SET FORTH IN THIS LEASE.

LESSEE: Midwest Open MRI, Inc.

(X) _____ DATE _____
Niranjang Gill, Pres.

_____ DATE _____

LESSOR: BLOCKWELL FUNDING CORP.

(X) _____ VP DATE 11/25/03
Accepted only if executed by an officer of Lessor and Lessor accepts this Lease only if governed under the Laws of the State of New York to which Lessee has heretofore agreed.

EXHIBIT
F

Nov 24 03 04:28p                                                                 p.7

**8. LIMITED PREARRANGED AMENDMENTS; AUTHORIZATION; SPECIFIC POWER OF ATTORNEY.** In the event it is necessary to amend the terms of this Lease to reflect a change in one or more of the following conditions: (a) Lessor's actual cost of procuring the Equipment, or (b) Lessor's actual cost of providing the Equipment to Lessee, or (c) A change in rental payments as a result of (1) or (2), above, or (d) Description of the Equipment, Lessee agrees that any such amendment shall be described in a letter from Lessor to Lessee, and unless within 15 days after the date of such letter Lessee objects in writing to Lessor, this Lease shall be deemed amended and such amendments shall be incorporated in the Lease herein as if originally set forth.

Lessee authorizes Lessor or its designee to file a Uniform Commercial Code financing statement without Lessee's signature, in form and content and from time to time as Lessor deems proper, listing Lessee as Lessor or Debtor. Lessee further grants to Lessor a specific power of attorney for Lessor to sign, endorse or negotiate for Lessor's benefit any instrument representing proceeds from any policy of insurance covering the Equipment.

**9. LESSEE'S REPRESENTATION.** Lessee represents that its exact legal name, state of incorporation, location of its chief executive office and/or its place of residence as applicable, have been correctly identified to Lessor.

**10. USE; EQUIPMENT LOCATION.** Lessee shall use the Equipment in a careful manner, make all necessary repairs at Lessee's expense, shall comply with all laws relating to its possession, use, or maintenance, and shall not make any alteration, additions, or improvements to the Equipment without Lessor's prior written consent. All additions, repairs or improvements made to the Equipment shall belong to Lessor. The equipment shall be kept at the location specified above, or, if none is specified, at Lessee's address as set forth above and shall not be removed without Lessee's written consent.

**11. OWNERSHIP; PERSONALTY.** The Equipment is, and shall remain, the property of Lessor, and Lessee shall have no right, title, or interest in the Equipment except as expressly set forth in this Lease. The Equipment shall remain personal property even though installed in or attached to real property.

**12. SURRENDER.** By this Lease, Lessee acquires no ownership right in the Equipment, and has no option to purchase same. Upon the expiration, or earlier termination or cancellation of this Lease, or in the event of a default under Paragraph 20, hereof, Lessee, at its expense, shall return the Equipment in good repair, ordinary wear and tear resulting from proper use thereof alone excepted, by delivering it, packed and ready for shipment, to such place or carrier as Lessor may specify.

**13. RENEWAL.** At the expiration of the Lease, Lessee shall return the Equipment in accordance with Paragraph 12, hereof. At Lessor's option, this Lease may be continued on a month-to-month basis until 30 days after Lessee returns the Equipment to Lessor. In the event Lessee is so continued, Lessee shall pay to Lessor rentals in the same periodic amounts indicated under 'Amount of Each Payment' above.

**14. LOSS AND DAMAGE.** Lessee shall at all times after signing this Lease bear the entire risk of loss, theft, damage or destruction of the Equipment from any cause whatsoever, and no loss, theft, damage or destruction of the Equipment shall relieve Lessee of the obligation to pay rent or to comply with any other obligation under this Lease. In the event of damage to any part of the Equipment, Lessee shall immediately place the same in good repair at Lessee's expense. If Lessor determines that any part of the Equipment is lost, stolen, destroyed or damaged beyond repair, Lessee shall at Lessee's option do one of the following: (a) Replace the same with like equipment in good repair, acceptable to Lessor; or (b) Pay Lessor in cash the following: (i) all amounts due to Lessor under this Lease up to the date of the loss, (ii) the accelerated balance of the total amounts due for the remaining term of this Lease attributable to said item, discounted to present value at a discount rate of 9% as of the date of loss; and (iii) the Lessor's estimate as of the time this Lease was entered into of Lessor's residual interest in the Equipment discounted to present value at a discount rate of 9%, as of the date of loss. Upon Lessor's receipt of payment as set forth above, Lessee shall be entitled to title to the Equipment without any warranties. If insurance proceeds are used to fully comply with this subparagraph, the balance of any such proceed shall go to Lessee to compensate for loss of use of the Equipment for the remaining term of the Lease.

**15. INSURANCE; LIENS; TAXES.** Lessee shall provide and maintain insurance against loss, theft, damage, or destruction of the Equipment in an amount not less than the full replacement value of the Equipment, with loss payable to Lessor. Lessee also shall provide and maintain comprehensive general all-risk liability insurance including but not limited to product liability coverage, insuring Lessor and Lessee, with a severability of interest endorsement, or its equivalent, against any and all loss or liability for all damages, either to persons or property or otherwise, which might result from or happen in connection with the condition, use, or operation of the Equipment, with such limits and with an insurer satisfactory to Lessor. Each policy shall expressly provide that said insurance as to Lessor and its assigns shall not be invalidated by any act, omission, or neglect of Lessee and cannot be canceled without 30 days' prior written notice to Lessor. As to each policy Lessee shall furnish to Lessor a certificate of insurance from the insurer, which certificate shall evidence the insurance coverage required by this paragraph. Lessor shall have no obligation to ascertain the existence of or provide any insurance coverage for the Equipment or for Lessee's benefit. If Lessee fails to provide such insurance, Lessor will have the right, but no obligation, to have such insurance protecting Lessor placed at Lessee's expense. Such placement will result in an increase in Lessee's periodic payments, such increase being attributed to Lessor's costs of obtaining such insurance and any customary charges or fees of Lessor's or its designee associated with such insurance.

Lessee shall keep the Equipment free and clear of all levies, liens, and encumbrances. Lessee shall pay all charges and taxes (local, state, and federal) which may now or hereafter be imposed upon the ownership, leasing, rental, sale, purchase, possession, or use of the Equipment, excluding, however, all taxes on or measured by Lessor's net income. If Lessee fails to pay said charges or taxes, Lessor shall have the right, but shall not be obligated, to pay such charges or taxes. In that event, Lessor shall notify Lessee of such payment and Lessee shall repay to Lessor the cost thereof within 15 days after such notice is mailed to Lessee.

**16. INDEMNITY.** Lessee shall indemnify Lessor against any claims, actions, damages, or liabilities, including all attorney fees, arising out of or connected with Equipment, without limitation. Such indemnification shall survive the expiration, cancellation, or termination of this Lease. Lessee waives any immunity Lessee may have under any industrial insurance act, with regard to indemnification of Lessor.

**17. ASSIGNMENT BY LESSOR.** Any assignee of Lessor shall have all of the rights but none of the obligations of Lessor under this Lease. Lessee shall recognize and hereby consents to any assignment of this Lease by Lessor, and shall not assert against the assignee any defense, counterclaim, or setoff that Lessee may have against Lessor. Subject to the foregoing, this Lease inures to the benefit of and is binding upon the heirs, devisees, personal representatives, survivors, successors in interest, and assigns of the parties hereto.

**18. SERVICE CHARGES; INTEREST.** If Lessee shall fail to make any payment required by this Lease within 10 days of the date thereof, Lessee shall pay to Lessor a service charge of 10% of the amount due, provided, however, that not more than one such service charge shall be made on any delinquent payment, regardless of the length of the delinquency. In addition to the foregoing service charge, Lessee shall pay to Lessor a default fee with respect to any payment which becomes thirty (30) days past due. In addition, Lessee shall pay to Lessor any actual additional expenses incurred by Lessor in collection efforts, including but not limited to long-distance telephone charges and travel expenses. Lessee shall pay to Lessor interest on any delinquent payment of amount due under this Lease from the due date thereof until paid, at the lesser of the maximum rate of interest allowed by law or 18% annum.

**19. TIME OF ESSENCE.** Time is of the essence of this Lease, and this provision shall not be implicitly waived by the acceptance on occasion of late or defective performance.

**20. DEFAULT.** Lessee shall be in default if: (a) Lessee shall fail to make any payment due under the terms of this Lease for a period of 10 days from the due date thereof; or (b) Lessee shall fail to observe, keep, or perform any provision of this Lease, and such failure shall continue for a period of 10 days; or (c) Lessee has made any misleading or false statement in connection with application for or performance of this Lease; or (d) The Equipment or any part thereof shall be subject to any lien, levy, seizure, assignment, transfer, bulk transfer, encumbrance, application, attachment, execution, sublease, or sale without prior written consent of Lessor, or if Lessee shall abandon the Equipment or permit any other entity or person to use the Equipment without the prior written consent of Lessor; or (e) Lessee dies or ceases to exist; or (f) Lessee defaults on any other agreement it has with Lessor; or (g) Any guarantor of this Lease defaults on any obligation to Lessor or any of the above listed events of default occur with respect to any guarantor or any such guarantor files or has filed against it a petition under the bankruptcy laws.

**21. REMEDIES.** If Lessee is in default, Lessor, with or without notice to Lessee, shall have the right to exercise any one or more of the following remedies, concurrently or separately, and without any election of remedies being deemed to have been made: (a) Lessor may enter upon Lessee's premises and without any court order or other process of law may repossess and remove the Equipment, or render the Equipment unusable without removal, either with or without notice to Lessee. Lessee hereby waives any trespass or right of action for damages by reason of such entry, removal, or disabling. Any such repossession shall not constitute a termination of this Lease unless Lessor so notifies Lessee in writing; (b) Lessor may require Lessee, at its expense, to return the Equipment in good repair, ordinary wear and tear resulting from proper use thereof alone excepted, by delivering it, packed and ready for shipment, to such place or carrier as Lessor may specify; (c) Lessor may cancel or terminate this Lease and may retain any and all prior payments paid by Lessee; (d) Lessor may declare all sums due and to become due under this Lease immediately due and payable, including as to any or all items of Equipment, without notice or demand to Lessee; (e) Lessor may re-lease the Equipment, without notice to Lessee, to any third party, upon such terms and conditions as Lessor alone shall determine, or may sell the Equipment, without notice to Lessee, at private or public sale, at which sale Lessor may be the purchaser; (f) Lessor may sue for and recover from Lessee the sum of all unpaid rents and other payments due under this Lease then accrued, all accelerated future payments due under this Lease, discounted to their present value at a discount rate of 9% as of the date of default, plus Lessor's estimate at the time this Lease was entered into of Lessor's residual interest in the Equipment, reduced to present value at a discount rate of 9% as of the date of default, less the net proceeds of disposition, if any, of the Equipment; (g) To pursue any other remedy available to Lessor, by law, by statute or in equity. No right or remedy herein conferred upon or reserved to Lessor is exclusive of any other right or remedy herein, or by law or by equity provided or permitted, but each shall be cumulative of every other right or remedy given herein or now or hereafter existing by law or equity or by statute or otherwise, and may be enforced concurrently therewith or from time to time. No single or partial exercise by Lessor of any right or remedy hereunder shall preclude any other or further exercise of any other right or remedy.

**22. MULTIPLE LESSEES.** Lessor may, with the consent of any one of the Lessees hereunder, modify, extend, or change any of the terms hereof without consent or knowledge of the others, without in any way releasing, waiving, or impairing any right granted to Lessor against the others. Lessees and each of them are jointly and severally responsible and liable to Lessor under this Lease.

**23. EXPENSE OF ENFORCEMENT.** In the event of any legal action with respect to this Lease, the prevailing party in any such action shall be entitled to reasonable attorney fees, including attorney fees incurred at the trial level, including action in bankruptcy court, on appeal or review, or incurred without action, suits, or proceedings, together with all costs incurred in pursuit thereof. LESSEE EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY LITIGATION COMMENCED WITH RESPECT TO THIS LEASE.

**24. ENTIRE AGREEMENT; NO ORAL MODIFICATIONS; NO WAIVER.** This instrument constitutes the entire agreement between Lessor and Lessee. No provision of this Lease shall be modified or rescinded unless in writing signed by a representative of Lessor. Waiver by Lessor of any provision hereof in one instance shall not constitute a waiver as to any other instance.

**25. SEVERABILITY.** This Lease is intended to constitute a valid and enforceable legal instrument, and no provision of this Lease that may be deemed unenforceable shall in any way invalidate any other provision or provisions hereof, all of which shall remain in full force and effect.

**26. FACSIMILE.** If a signed copy of this Lease or any associated document is delivered to Lessor by facsimile transmission it shall be binding on Lessee and Lessee agrees, notwithstanding any rule of evidence to the contrary, that such facsimile signature of Lessee shall be deemed an original signature.

Dec 05 03 09:07a                                                          p.2

# HITACHI

HITACHI MEDICAL SYSTEMS AMERICA, INC.
1959 SUMMIT COMMERCE PARK
TWINSBURG, OHIO 44087
PHONE: 330.425.1313
       800.800.3106
FAX:   330.425.1410

INVOICE   00683

DATE   12/5/03

| SOLD TO: | BLOCKWELL FUNDING<br>50 Gerard Street<br>Huntington, NY 11743 | DATE SHIPPED: | TBD |
| | | FOB SHIP POINT: | Destination |
| SHIP TO: | MIDWEST OPEN MRI<br>7810 West North Ave<br>Elmwood Park, IL 60707 | ROUTING: | N.A. Van Lines |
| | | BILL OF LADING: | |
| | | CUSTOMER ORDER NO. | CT496 |

| CUSTOMER ACCT. NO. | PAYMENT TERMS | | | SALESPERSON | |
|---|---|---|---|---|---|
| DATE ENTERED | 100% Due Now | | | AREA | S/N |
| QTY. | DESCRIPTION | | | AMOUNT | |

| | | AMOUNT |
|---|---|---|
| AIRIS 0.3T Open Permanent Magnet System to AIRIS II 0.3T Open Permanent Magnet System Upgrade Serial No. C-782 | | $125,000.00 |
| Sales Tax @ 6.25% | | $7,812.50 |
| TOTAL SYSTEM COST | | $132,812.50 |
| PLEASE PAY THIS AMOUNT | | $132,812.50 |

Wire Transfer Information:        Remittance Address:
Bank One Cleveland NA             P.O. Box 714228
600 Superior Ave.                 Columbus, OH 43271-4228
Cleveland, OH 44115-1896

ACCOUNT NUMBER 800743525
ROUTING NUMBER 044000037
PLEASE PAY FROM INVOICE — NO STATEMENT WILL BE SENT

Oct 03 03 12:40p                                                                          P.3

# HITACHI

**HITACHI MEDICAL SYSTEMS AMERICA, INC.**
1959 Summit Commerce Park, Twinsburg, Ohio 44087-2371
Tel: 330.425.1313  Fax: 330.425.1410

Quotation No.  CT486

Revision No:

Page:

Quote Date:  10/01/2003

Midwest Open MRI

| Qty | Item | Description | Unit Price | Customer Price |
|-----|------|-------------|-----------|----------------|
| | | **SYSTEM** | | |
| 1 | | AIRIS® II OPEN PERMANENT MAGNET UPGRADE  (AIRIS to AIRIS II) | $300,000 | $175,000 |

08CV4032

Case 1:08-cv-04032     Document 1-8     Filed 07/16/2008     Page 1 of 3

JUDGE NORGLE

MAG. JUDGE COX
P.4
J.N.

Nov 24 03 04:26p

# BLOCKWELL FUNDING CORP.

50 GERARD STREET, HUNTINGTON, NY 11743

(631) 547-1800   FAX (631) 547-1801

LEASE NO.:_____

LEASE DATE:_____

| FULL LEGAL NAME AND ADDRESS OF LESSEE | SUPPLIER OF EQUIPMENT (COMPLETE ADDRESS) |
|---|---|
| Midwest Open MRI, Inc. 8319 West North Avenue Melrose Park, IL 60160 | See Exhibit "A" |

JOINTLY AND SEVERALLY RESPONSIBLE

| | EQUIPMENT LEASED |
|---|---|
| QUANTITY | DESCRIPTION, MODEL NO., SERIAL NO. OR OTHER IDENTIFICATION AND MANUFACTURER |
| | SEE EXHIBIT "A" |

Term of Lease: ____66____ months.

Rental Payments: $724.80 + Tax_____ per month for the first __6__ months,

followed by $10,797.98 + Tax_____ per month for the next _60_ months,

followed by $_____ per month for the next _____ months,

Advance Rentals: $11,522.78 + Tax_____ payable at the time of signing of

this lease to be applied to the _Last 1 + First__

EQUIPMENT LOCATION IF DIFFERENT:

### TERMS AND CONDITIONS OF LEASE

1. **LEASE.** Lessee hereby leases from Lessor, and Lessor leases to Lessee, the personal property described above, together with any replacement parts, additions, repairs or accessories now or hereafter incorporated in or affixed to it (hereinafter referred to as the "Equipment).

2. **ACCEPTANCE OF EQUIPMENT.** Lessee agrees to inspect the Equipment and to execute an Acknowledgment and Acceptance of Equipment by Lessee notice, as provided by Lessor, after the Equipment has been delivered and after Lessee is satisfied that the Equipment is satisfactory in every respect. Lessee hereby authorizes Lessor to insert in this Lease serial numbers or other identifying data with respect to the Equipment.

3. **DISCLAIMER OF WARRANTIES AND CLAIMS; LIMITATION OF REMEDIES. THERE ARE NO WARRANTIES BY OR ON BEHALF OF LESSOR.** Lessee acknowledges and agrees by his signature below as follows:
(a) LESSOR MAKES NO WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS FOR OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY CHARACTERISTICS OF THE EQUIPMENT;
(b) Lessee has fully inspected the Equipment which it has requested Lessor to acquire and lease to Lessee, and the Equipment is in good condition and to Lessee's complete satisfaction;
(c) Lessee leases the Equipment "as is" and with all faults;
(d) Lessee specifically acknowledges that the Equipment is leased to Lessee solely for commercial or business purposes and not for personal, family, household, or agricultural purposes;
(e) if the Equipment is not properly installed, does not operate as represented or warranted by the supplier or manufacturer, or is unsatisfactory for any reason, regardless of cause or consequence, Lessee's only remedy, if any, shall be against the supplier or manufacturer of the Equipment and not against Lessor;
(f) Provided Lessee is not in default under this Lease, Lessor assigns to Lessee any warranties made by the supplier or the manufacturer of the Equipment;
(g) LESSEE SHALL HAVE NO REMEDY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES AGAINST LESSOR; and
(h) NO DEFECT, DAMAGE, OR UNFITNESS OF THE EQUIPMENT FOR ANY PURPOSE SHALL RELIEVE LESSEE OF THE OBLIGATION TO PAY RENT OR RELIEVE LESSEE OF ANY OTHER OBLIGATION UNDER THIS LEASE.

The parties have specifically negotiated and agreed to the foregoing paragraph.        Initials

4. **STATUTORY FINANCE LEASE.** Lessee agrees and acknowledges that it is the intent of both parties to this Lease that it qualify as a statutory finance lease under Article 2A of the Uniform Commercial Code. Lessee acknowledges and agrees that Lessee has selected both: (1) the Equipment, and (2) the supplier from whom Lessor is to purchase the Equipment. Lessee acknowledges that Lessor has not participated in any way in Lessee's selection of the Equipment or of the supplier, and Lessor has not selected, manufactured, or supplied the Equipment.

5. **ASSIGNMENT BY LESSEE PROHIBITED.** WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, LESSEE SHALL NOT ASSIGN THIS LEASE OR SUBLEASE THE EQUIPMENT OR ANY INTEREST THEREIN, OR PLEDGE OR TRANSFER THIS LEASE, OR OTHERWISE DISPOSE OF THE EQUIPMENT COVERED HEREBY.

6. **COMMENCEMENT; RENTAL PAYMENTS; INTERIM RENTALS.** This Lease shall commence upon the written acceptance hereof by Lessor and shall end upon full performance and observance by Lessee of each and every term, condition, and covenant set forth in this Lease and Schedules hereto and any extensions hereof. Rental Payments shall be in the amounts and frequency as set forth on the face of this Lease or any Schedules hereto. In addition to regular rentals, Lessee shall pay to Lessor interim rent for the use of the Equipment prior to the due date of the first payment. Interim rent shall be in an amount equal to 1/30th of the monthly rental, multiplied by the number of days elapsing between the date on which the Equipment is accepted by Lessee and the commencement date of this Lease, together with the number of days elapsing between commencement of the Lease and the due date of the first payment. The payment of interim rent shall be due and payable upon Lessee's receipt of invoice from Lessor. The rental period under the Lease shall terminate following the last day of the terms stated on the face hereof or in any Schedule hereto unless such Lease or Schedule has been extended or otherwise modified. Lessor shall have no obligation to Lessee under this Lease if the Equipment, for whatever reason, is not delivered to Lessee within ninety (90) days after Lessee signs this Lease. Lessor shall have no obligation to Lessee under this Lease if Lessee fails to execute and deliver to Lessor an Acknowledgment and Acceptance of Equipment by Lessee acknowledging its acceptance of Equipment within thirty (30) days after it is delivered to Lessee, with respect to this Lease or any Schedule hereto.

7. **CHOICE OF LAW.** This Lease shall not be effective until signed by Lessor at its principal office listed above. This Lease shall be considered to have been made in the state of Lessor's principal place of business listed above and shall be interpreted in accordance with the laws and regulations of the state of Lessor's principal place of business.

Lessee agrees to jurisdiction in the state of Lessor's principal place of business listed above in any action, suit or proceeding regarding this Lease, and each of them, transacted business in the state of Lessor's principal place of business by entering into this Lease. In the event of any legal action with regard to this Lease or the equipment covered hereby, Lessee agrees that venue may be laid in the County of Lessor's principal place of business.

THIS LEASE IS NOT CANCELABLE OR TERMINABLE BY LESSEE.  SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS WHICH ARE A PART OF THIS LEASE.

IF THE LESSEE ELECTS NOT TO PROCEED FOR ANY REASON, THEN ANY MONIES COLLECTED WILL BE RETURNED AT THE SOLE OPTION OF BLOCKWELL FUNDING CORP.

LESSEE UNDERSTANDS AND ACKNOWLEDGES THAT NO BROKER OR SUPPLIER, NOR ANY SALESMAN, BROKER, OR AGENT OF ANY BROKER OR SUPPLIER, IS AN AGENT OF LESSOR. NO BROKER OR SUPPLIER, NOR ANY SALESMAN, BROKER, OR AGENT OF ANY BROKER OR SUPPLIER, IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE, AND NO REPRESENTATION AS TO THE EQUIPMENT OR ANY OTHER MATTER BY THE BROKER OR SUPPLIER, NOR ANY SALESMAN, BROKER, OR AGENT OF ANY BROKER OR SUPPLIER, SHALL IN ANY WAY AFFECT LESSEE'S DUTY TO PAY THE RENTALS AND TO PERFORM LESSEE'S OBLIGATIONS SET FORTH IN THIS LEASE.

LESSEE: Midwest Open MRI, Inc.

LESSOR: BLOCKWELL FUNDING CORP.

(X)_____ DATE _____

Roranjana Giri, Pres.

_____ DATE _____

_____ DATE 11/25/03

Accepted only if executed by an officer of Lessor and Lessor accepts this Lease only if governed under the Laws of the State of New York to which Lessee has heretofore agreed.

**EXHIBIT**

G

Oct 03 03 12:40p                                                                    p.2

## Progress Invoice

| INVOICE NO. | DATE | PAGE |
|---|---|---|
| Proforma | 09/29/03 | 1 |

**ORDER REFERENCE NO.**
702225

**INVOICE AMOUNT**
$335,200.00

**PURCHASE ORDER NUMBER**
8-8-4211

**BILL TO:**
Blockwell Funding Corp
52 Gerard Street
Huntington, NY 11743

**SHIP TO:**
Midwest Open MRI, Inc
3319 West North Ave.
Melrose Park, IL 60160

**REMIT TO:**
PHILIPS MEDICAL SYSTEMS N.A. CO
PO BOX 100355
ATLANTA, GA 30384-0355

| BILL TO CUSTOMER NO. | SHIP TO CUSTOMER NO. | SHIPPING TERMS |
|---|---|---|
| 952070667 | 951140982 | ORGIN; PREPAY & ABSORB |

| PMSNA REPRESENTATIVE | CUSTOMER CONTACT | REGION | CUSTOMER TELE NO. | CONTRACT AMOUNT |
|---|---|---|---|---|
| | | | | $419,902.00 |

| LINE NO. | PRODUCT NUMBER | PRODUCT DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|
| 1 | | Philips Refurb CT System | | | $335,200.00 |

| | | | | |
|---|---|---|---|---|
| TAXABLE AMOUNT | $ | SUB TOTAL | | $335,200.00 |
| STATE SALES TAX | $ | TOTAL SALES TAX | | $ |
| COUNTY TAX | $ | | | |
| CITY TAX | $ | | | |
| DISTRICT TAX | $ | | | |
| BILL OF LADING$: | | TOTAL AMOUNT OF THIS INVOICE | | $335,200.00 |

PHILIPS MEDICAL SYSTEMS APPRECIATES YOUR BUSINESS
IF YOU HAVE ANY QUESTIONS PLEASE CALL 800-426-2670

PAYMENT DUE: DUE UPON RECEIPT OF INVOICE
COMMUNICATIONS CONCERNING DISPUTED BILLINGS, INCLUDING A
CHECK TENDERED AS FULL SATISFACTION OF A DEBT SHOULD BE
DIRECTED ONLY TO THE ATTENTION OF PHILIPS CREDIT MANAGER
P.O. BOX 100355, ATLANTA, GA 30384-0355

Sep 30 03 02:41p                                                    p.2

**Final Invoice**

| INVOICE NO. | DATE | PAGE |
|---|---|---|
| Proforma | 09/29/03 | 1 |

ORDER REFERENCE NO.
702225

PURCHASE ORDER NUMBER
8-8-4211

INVOICE AMOUNT
$419,902.00

| BILL TO: | SHIP TO: | REMIT TO: |
|---|---|---|
| Blackwell Funding Corp | Midwest Open MRI, Inc | PHILIPS MEDICAL SYSTEMS N.A. CO |
| 50 Gerard Street | 8319 West North Ave. | PO BOX 100355 |
| Huntington, NY 11743 | Melrose Park, IL 60160 | ATLANTA, GA 30384-0355 |

| BILL TO CUSTOMER NO. | SHIP TO CUSTOMER NO. | SHIPPING TERMS |
|---|---|---|
| 952070667 | 951140982 | ORGIN; PREPAY & ABSORB |

| PMSNA REPRESENTATIVE | CUSTOMER CONTACT | REASON | CUSTOMER TELE.NO. | CONTRACT AMOUNT |
|---|---|---|---|---|
| | | | | $419,902.00 |

| LINE NO. | PRODUCT NUMBER | PRODUCT DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|
| 1 | | Reconditioned MX8000 Quad Slice AP CT Scanner System | | | $419,902.00 |

| TAXABLE AMOUNT | $ | SUB TOTAL | $419,902.00 |
|---|---|---|---|
| STATE SALES TAX | $ | TOTAL SALES TAX | $ |
| COUNTY TAX | $ | | |
| CITY TAX | $ | | |
| DISTRICT TAX | $ | | |
| BILL OF LADING#: | | TOTAL AMOUNT OF THIS INVOICE | $419,902.00 |

PHILIPS MEDICAL SYSTEMS APPRECIATES YOUR BUSINESS
IF YOU HAVE ANY QUESTIONS PLEASE CALL 800-426-2670

**PAYMENT DUE: DUE UPON RECEIPT OF INVOICE**
COMMUNICATIONS CONCERNING DISPUTED BILLINGS, INCLUDING A
CHECK TENDERED AS FULL SATISFACTION OF A DEBT SHOULD BE
DIRECTED ONLY TO THE ATTENTION OF PHILIPS CREDIT MANAGER
P.O. BOX 100355, ATLANTA, GA 30384-0355

Nov 24 03 04:26p                                                    p.2

08CV4032
JUDGE NORGLE
MAG. JUDGE COX
J. N.

November 20, 2003

Dr. Giri
Midwest Open MRI, Inc.
7372 Kingery Highway
Darien, IL 60559

Re:    Equipment Lease

Dear Dr. Giri:

To accommodate the full funding of the referenced lease it is necessary to break the
transaction into two distinct leases:

|         | Equipment                    | First 6 Payments | Last 60 Payments |
|---------|------------------------------|------------------|------------------|
| Lease 1 | Philips & Construction        | $724.80          | $10,797.98       |
| Lease 2 | Hitachi Upgrade & Aires (DVI) | $475.20          | $7,079.47        |
| Total   |                              | $1,200.00        | $17,877.45       |

The funding of the DVI buyout ($227,084.07) requires that Leaf Funding, Inc. take clear
title to the equipment. To prove such clear title Leaf Funding, Inc. must receive UCC
terminations with respect to the equipment, return of the Note marked Paid, a Bill of Sale
from Midwest Open MRI, and verification of new serial number from Hitachi due to
upgrade. Lease documents and UCC filings will be amended to reflect new serial
number. If the required documentation is not received within 15 days of funding the
payoff Midwest Open MRI, Inc. agrees to refund the money to Leaf Funding, Inc. upon
demand.

Sincerely,

Leaf Funding, Inc.

Agreed To:
Midwest Open MRI, Inc.

By _____ Date _____

Title: _____

EXHIBIT
E